**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA )<br>)<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>T.W. LAQUAY MARINE, LLC, TIMOTHY W. LAQUAY and LINDA LAQUAY )<br>)<br>)<br>   Defendants. ) | CIVIL ACTION NO. 6:21-CV-47 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Travelers Casualty and Surety Company of America ("Travelers" or the "Surety"), files this Original Complaint against Defendants T.W. LaQuay Marine, LLC; Timothy W. LaQuay; and Linda LaQuay (collectively "Defendants"), and respectfully states as follows:

### I.   PARTIES

1.   Travelers is a corporation formed under the laws of the State of Connecticut with its principal place of business located in Hartford, Connecticut, which is the location from which Travelers's high-level officers direct, control, and coordinate Travelers's corporate activities. Travelers is duly qualified and authorized to transact business within the State of Texas.

2.   Upon information and belief, T.W. LaQuay Marine, LLC ("TW LaQuay") is a Texas limited liability company with its principal place of business in Port Lavaca, Texas. Upon information and belief, TW LaQuay's members include Timothy LaQuay and Linda LaQuay who are each a resident of the State of Texas. TW LaQuay may be served with process through its registered agent, Timothy LaQuay at 24 Fisher Road, Port Lavaca, Texas 77979.

3. Upon information and belief, Timothy W. LaQuay ("Mr. LaQuay") is a resident citizen of the State of Texas and may be served with process at his residence 953 McDonald Rd., Port Lavaca, Texas 77979.

4. Upon information and belief, Linda LaQuay ("Ms. LaQuay") is a resident citizen of the State of Texas and may be served with process at her residence 953 McDonald Rd., Port Lavaca, Texas 77979.

## II. JURISDICTION AND VENUE

5. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and cost. Furthermore, this Court also has jurisdiction over the subject matter of Count II of this action pursuant to 28 U.S.C. § 1331 as the request for declaratory judgment arises under federal law.

6. Because the Plaintiff, Travelers, is a citizen of Connecticut for diversity purposes, and Defendants are citizens of Texas for diversity purposes, complete diversity exists, and this Court has diversity jurisdiction over this matter.

7. Venue is proper in this district under 28 U.S.C. § 1391 in that (a) the Defendants either reside or maintain a principal place of business in this district in the State of Texas, (b) a substantial part of the events or omissions giving rise to the Surety's claim occurred in this district, and (c) Defendants are subject to personal jurisdiction in this district at the commencement of this action and there is no district in which the action may otherwise be brought.

## III. FACTUAL ALLEGATIONS

**A.     The Indemnity Agreement**

8. On or about August 15, 2018, to induce the Surety to issue the Bonds (as hereinafter

defined), TW LaQuay, Mr. LaQuay, and Ms. LaQuay (collectively, "Indemnitors") executed, a General Agreement of Indemnity, the purpose of which was to induce the Surety to furnish bonds on behalf of TW LaQuay and protect the Surety from any loss or expense it may incur arising from or related to the issuance of any such bonds. A true and correct copy of the August 15, 2018 General Agreement of Indemnity is attached hereto as ***Exhibit "A"*** and fully incorporated herein for all purposes (hereinafter, the "Indemnity Agreement").

9. Under the Indemnity Agreement, the Indemnitors promised to exonerate, indemnify, and keep Travelers indemnified from and against all loss that Travelers has incurred or anticipates that it will incur by reason of issuing the Bond (as hereinafter defined). Specifically, pursuant to the Indemnity Agreement, the Indemnitors agreed as follows:

> The Indemnitors shall exonerate, indemnify and save [Travelers] harmless from and against all Loss.

(***Exhibit "A"***, ¶ 3).

10. The Indemnity Agreement defines "Loss" as follows:

> **Loss** – All loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expenses incurred by reason of [Travelers's]: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond, including any expenses incurred by Company to defend any extra-contractual claim where there has been no final adverse determination/adjudication of liability against [Travelers] on such claim; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

(***Exhibit "A"***, ¶ 1).

11. To the extent that Travelers makes any payments under the Bond, the Indemnitors further agreed that "[a]n itemized, sworn statement by an employee of [Travelers], or other

evidence of payment shall be prima facie evidence of the propriety, amount, and existence of Indemnitors' liability." (***Exhibit "A"***, ¶ 3).

12. Under the Indemnity Agreement, the Indemnitors agreed to provide Travelers with unrestricted access to its books and records, "including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them." (***Exhibit "A"***, ¶ 10).

13. Further, by execution of the Indemnity Agreement in favor of the Surety, the Indemnitors obligated themselves to fully collateralize the Surety, upon demand, if losses were either incurred or anticipated by the Surety in connection with issuing bonds.

> Indemnitors agree to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with [Travelers], upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitors. Sums deposited with [Travelers] pursuant to this paragraph may be used by [Travelers] to pay such claim or be held by [Travelers] as collateral security against any Loss or unpaid premium on any Bond. [Travelers] shall have no duty to invest, or provide interest on the deposit. Indemnitors agree that [Travelers] would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with provisions of this paragraph.

(***Exhibit "A"***, ¶ 5).

14. "Bond(s)", as defined in the Indemnity Agreement, includes any and all bonds issued on behalf of any of the Indemnitors. "Indemnitors" include, among others, (1) the signatories to the Indemnity Agreement, (2) the Indemnitors who executed riders to the Indemnity Agreement, (3) the parent companies and wholly owned subsidiaries of the Indemnitors, and (4) any joint venture, association, or limited liability company in which one or more of the Indemnitors is involved. (***Exhibit "A"***, ¶ 1).

15. The Indemnitors further stipulated that the Surety is entitled to specific performance

of the Indemnitors' obligations under the Indemnity Agreement. (***Exhibit "A"***, ¶ 16).

16. Under the Indemnity Agreement, the joint and several duties and obligations of the Indemnitors extend to any Bond issued on behalf of or at the request of any of the Indemnitors. (***Exhibit "A"***, ¶ 7).

**B.   The Bonds**

17. In 2019, the U.S. Army Corps of Engineers, Galveston District ("USACE") awarded TW LaQuay Contract No. W912HY19C0010 (the "Contract") for the project known as Unrestricted Procurement for Brazos Island Harbor, Texas, Brownsville Ship Channel, Main Channel and Port Isabel Channel in Cameron County, Texas, Pipeline Dredging (the "Project").

18. Pursuant to the terms of the Contract, TW LaQuay was required to obtain and furnish performance and payment bonds in accordance with the federal Miller Act, codified by 40 U.S.C. § 3131. TW LaQuay requested the requisite bonding from the Surety.

19. In reliance on the Surety's rights and Indemnitors' obligations under the Indemnity Agreement, the Surety issued two (2) bonds at the request of TW LaQuay as principal, with the US Army Corps of Engineers, Galveston District as the obligee. One bond was issued for the Project, while a second bond was issued for a separate and distinct project. A true and correct copy of these bonds are attached hereto as ***Exhibit "B"*** (collectively, the "Bonds").

**C.   The Surety Incurred Loss and Anticipated Loss**

20. As of September 27, 2021, the Surety has received and/or is presently aware of payment bond claims totaling $7,330,459.49 plus interest and attorneys' fees on the Bonds (hereinafter referred to as the "Claims"). To date, the Surety has already reviewed and paid Claims in the amount of $3,835,152.50 in accordance with the Surety's obligations under the Bonds. Additionally, as of September 28, 2021, the Surety has incurred an additional $162,706.84 in

expenses in furtherance of its investigations into and defense of the Claims. Accordingly, as of the date of this Complaint, the Surety has incurred losses, excluding expenses and attorney fees, in the amount of $3,997,859.34 ("Incurred Loss").

21. By virtue of these claims, posting of collateral, and other obligations of the Indemnitors have been triggered under the Indemnity Agreement.

22. By letter dated May 14, 2021, attached hereto as *Exhibit "C"*, the Surety demanded that the Indemnitors jointly or severally (i) indemnity the Surety for the Incurred Loss of $155,847.84; and (ii) deposit with the Surety $5,522,094.66 in cash or other property acceptable to the Surety as collateral security, within seven (7) days of the date of the letter, to protect the Surety from all losses on the Projects.

23. Despite the Surety's demands, the Indemnitors have failed to deposit any collateral with the Surety relative to claims on the projects in violation of the Indemnity Agreement.

24. As of the date of this filing, the Indemnitors refuse to do anything to indemnify the Surety or otherwise hold the Surety harmless.

25. All conditions precedent to recovery by the Surety from the Indemnitors have occurred or have been performed.

## IV.   CAUSES OF ACTION

### Count I
### Breach of Indemnity Agreement

26. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

27. Indemnitors have failed, delayed, refused, or otherwise been unable to pay bills or other indebtedness incurred in connection with the projects for which the Bonds were issued. The Indemnitors failures have resulted in direct and indirect Losses to the Surety.

28. Under Paragraph 5 of the Indemnity Agreement, the Indemnitors are obligated to deposit with the Surety an amount as determined by the Surety "sufficient to discharge any Loss or anticipated Loss." (***Exhibit "A"***, ¶ 5).

29. As of the date of this filing, the Surety has incurred Loss, and continues to incur Loss, as a result of issuance of the Bond.

30. Pursuant to Paragraphs 3 and 5 of the Indemnity Agreement, on May 14, 2021, the Surety demanded that the Indemnitors deposit collateral relative to the Claims or otherwise exonerate, indemnify, and save harmless the Surety from Loss associated with the Claims.

31. Despite the Surety's demand, to date, the Indemnitors have failed and/or refused to exonerate, collateralize, and indemnify the Surety or to otherwise pay the Surety an amount sufficient to discharge the Loss or Claims against the Surety from having issued the Bonds.

32. The failure of the Indemnitors to deposit the demanded collateral with the Surety constitutes a breach of Paragraph 5 of the Indemnity Agreement. Further, the failure of the Indemnitors to exonerate, indemnify, and save harmless the Surety from the Claims constitutes a breach of Paragraph 3 of the Indemnity Agreement. Each of these failures by the Indemnitors constitute a Default under Paragraph 1 of the Indemnity Agreement. The wrongful acts of the Indemnitors constitute independent breaches of the Indemnity Agreement. (***Exhibit "A"***, ¶¶ 1, 3, 5).

33. Under the Indemnity Agreement, the Indemnitors are jointly and severally liable to the Surety for all of the Surety's Loss and expense, including attorney's fees, in connection with Claims on the Bond. (***Exhibit "A"***, ¶¶ 3, 7).

34. The Surety is therefore entitled to payment by Indemnitors for all of the Surety's Loss and expense resulting from issuance of the Bonds.

## Count II
## Declaratory Judgment

35. The Surety incorporates by reference, as if fully set forth, the allegations contained in the proceeding paragraphs.

36. As a result of TW LaQuay's failure to make timely payments to its subcontractors on the Project, multiple subcontractors submitted claims under the Bonds to Travelers. In accordance with its obligations under the Bonds, Travelers has reviewed, investigated, and paid those claims it has thus far determined to be valid.

37. Having satisfied such bond obligations under the Miller Act, the Surety is equitably subrogated to TW LaQuay's right to any remaining contract funds. Under the doctrine of equitable subrogation, a surety, like Travelers, is entitled to step into its bond principal's shoes to assert its rights in earned contract balances in the Government's possession in reimbursement of the surety's bond losses. *See, e.g., Colonial Sur. Co. v. United States*, 108 Fed. Cl. 622, 633 (2013) ("'The theory of equitable subrogation is based on the view that the triggering of a surety's bond obligation gives rise to an implied assignment of rights by operation of law whereby the surety 'is subrogated to the [principal contractor's] property rights in the contract balance.'") (alterations in original) (quoting *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1312 (Fed. Cir. 2011) quoting *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1161 (Fed. Cir. 1985))).

38. On or about April 29, 2021, USACE issued a notice of termination for convenience to TW LaQuay pursuant to Federal Acquisition Regulation ("FAR") 52.249-1. Subsequently, USACE prepared, and TW LaQuay executed a bilateral Amendment/Modification No. P00002 to the Contract to effect a mutually agreed-upon termination settlement (the "Modification"). This Modification, attached hereto as **Exhibit "D"**, provides that the final payment owing to TW LaQuay under the Contract is in the amount of $1,802,798.61.

39. By letter dated May 3, 2021, attached hereto as **Exhibit "E"**, the Surety notified USACE's Contracting Officer of the Surety's equitable subrogation rights and the Government's duty as a stakeholder to withhold payments from the Contractor. In this regard, the Government was placed on notice that subcontractor claims against Bond No. 106988559 included: (i) USA fubo Great Lakes Dredge & Dock Co. v. T.W. LaQuay Marine, LLC & Travelers Casualty & Surety Company of America, #1:20-cv-03350, USDC, Northern District of Illinois: Demand: $3,608,892.97; (ii) USA fubo Diamond Services Corp. v. T.W. LaQuay Marine, LLC & Travelers Casualty & Surety Company of America, #3:21-cv-00078, USDC, Southern District of Texas; Demand: $23,781.19; (iii) USA Ex Rel. Brown Water Marine Service, Inc. v. T.W. LaQuay Marine, LLC & Travelers Casualty & Surety Company of America, #2-21-cv-00023, USDC, Southern District of Texas; Demand: $65,122.50; and (iv) Nationwide Capital Funding, Inc. on behalf of Novak Diesel Services, LLC; Claim Demand: $122,309.66.

40. The amounts paid by the Surety to TW LaQuay's subcontractors under Bond No. 106988559 currently total $3,110,152.50.

41. It is well established that once the Government has been notified by a surety of an actual or potential contractor default, the Government becomes a "stakeholder" with duties owing to the surety. *See, e.g., Colonial*, 108 Fed. Cl. at 633-35 ("Notice by the surety that the contractor is invoking its rights to the remaining contract proceeds[,] converts the Government into a stakeholder with duties to the surety….'"); *Transamerica Premier Ins. Co. v. United States*, 32 Fed. Cl. 308, 314 (1994) ("Where the Government has on hand contract funds owing for work done and is alerted, by the surety, to the possibility of unpaid materialmen's claims, and to the surety's demand that the contract funds be protected pending investigation, it may not dispense those funds to the contractor – at least not without running the distinct risk of having to pay

twice.").

42. Furthermore, FAR 28.106-7(b) provides that "[i]f, after completion of the contract work, the Government receives written notice from the surety regarding the contractor's failure to meet its obligation to its subcontractors or suppliers, the USACE Contracting Officer shall withhold final payment. However, the surety must agree to hold the Government harmless from any liability resulting from withholding the final payment."

43. As a result, on or about May 13, 2021, the USACE's Contracting Officer notified the Surety that he would withhold all payments to TW LaQuay until TW LaQuay and the Surety reached an agreement regarding the direction of final payment.

44. On or about July 23, 2021, the USACE's Contracting Officer provided the Surety with a copy of the Modification and reassured the Surety that it would not sign the Modification or release any funds until it received an agreement between the Surety and the TW LaQuay.

45. Per FAR 28.106-7(b), "the contracting officer will authorize final payment upon agreement between the contractor and surety **or upon a judicial determination of the rights of the parties**" (emphasis added).

46. The Surety and TW LaQuay have discussed but are unable to reach an agreement on the rights of the parties and disposition of Contract funds.

47. On September 1, 2021, the USACE's Contracting Officer emailed the Surety to request a status update on any agreement between the Surety and TW LaQuay. The Surety notified the USACE Contracting Officer that no agreement has been reached.

48. Given this impasse, and in accordance with FAR 28.106-7(b), the Surety now seeks a judgment declaring that it is equitably subrogated to TW LaQuay's right to the final payment withheld by USACE as stakeholder.

*Count III*
*Recovery of Attorneys' Fees and Expenses*

49. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

50. The Surety is entitled to recover its attorneys' fees and expenses from Indemnitors under the Indemnity Agreement.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Travelers Casualty and Surety Company of America respectfully requests that T.W. LaQuay Marine, LLC; Timothy W. LaQuay; and Linda LaQuay be cited to appear and answer herein and, upon final trial thereof, that Travelers receive:

1. Judgment against Defendants, T.W. LaQuay Marine, LLC, Timothy W. LaQuay, and Linda LaQuay, jointly and severally, in the amount of damages incurred by Travelers;

2. Judgment against Defendants, T.W. LaQuay Marine, LLC, Timothy W. LaQuay, and Linda LaQuay, jointly and severally, for amounts necessary to exonerate Travelers from all liability asserted against it;

3. In accordance with Federal Acquisition Regulation 28.106-7, a judicial determination of Travelers Casualty and Surety Company of America's equitable subrogation rights as a performing payment bond surety to the final payment owing under the Contract in the amount of $1,802,798.61.

4. Pre-judgment and post judgment interest at the maximum permissible at law or in equity;

5. Costs of this suit and attorneys' fees; and

6. Such other and further relief to which the Surety is justly entitled.

Respectfully submitted,

**KREBS FARLEY & DRY, PLLC**

By: */s/ Steven K. Cannon*
    Ryan D. Dry
    State Bar No. 24050532
    Steven K. Cannon
    State Bar No. 24086997
    909 18th Street
    Plano, TX 75074
    (972) 737-2564 Telephone
    (972) 737-2543 Facsimile
    rdry@krebsfarley.com
    scannon@krebsfarley.com

**ATTORNEYS FOR DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**